UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————

SHAHIDA NISA MUHAMMAD,

                        Plaintiff,            24-cv-7852 (JGK)

          - against -                MEMORANDUM OPINION
                                              AND ORDER

THE TRUSTEES OF COLUMBIA UNIVERSITY
& ALEX JURADO,
                        Defendants.
————————————————————————————

JOHN G. KOELTL, District Judge:

    The pro se plaintiff, Shahida Nisa Muhammad ("Muhammad"),
brings this action against the Trustees of Columbia University
("Columbia") and Alex Jurado ("Jurado"). See Second Am. Compl.
("SAC") ¶¶ 4-6, ECF No. 37.

    The SAC asserts claims under (1) Title IX of the Education
Amendments of 1972, 20 U.S.C. § 1681 et seq. (Count I); (2)
Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et
seq. (Count II); (3) the Americans with Disabilities Act (the
"ADA"), 42 U.S.C. § 12101 et seq. (Count III); and (4) 42 U.S.C.
§ 1983 (Count IV).[1] See id. ¶¶ 15-18. The plaintiff alleges that
she was subjected to a series of on-campus harassments by
Columbia students and staff. See id. ¶¶ 7-14. As relief, the
plaintiff seeks $100 million in compensatory damages and
injunctive relief requiring anti-discrimination training and

—————————————

[1] As a general rule, an amended complaint supersedes the original
complaint, rendering the original complaint inoperative. Shields v. Citytrust
Bancrop, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994). In this case, the operative
complaint is the SAC.

revisions to the religious accommodation polices. See id. ¶ VI
(1)-(2).

## I. FACTUAL BACKGROUND

Unless otherwise noted, the following facts are taken from
the SAC and are accepted as true for purposes of the current
motion.

The plaintiff, Muhammad, is a Black Muslim woman and a
senior at Columbia College. Id. ¶ 4. She alleges that Columbia
receives federal financial assistance. Id. ¶ 5.

The plaintiff alleges that, from September through November
2024, she was subjected to a series of discriminatory or
harassing incidents. See id. ¶¶ 7-14. She alleges that two male
students, Jordan Kelley and Jonathon Nalikka, "hijacked [her]
Bluetooth devices to track her movements."[2] Id. ¶ 7a. While she
was reporting harassment to the New York Police Department
("NYPD")/Columbia Public Safety, another individual, Andre
Adomino,[3] allegedly photographed her without her consent. Id. ¶
7b. In a separate episode, the plaintiff alleges that an Asian
student, Julie Wu, sent her "multiple threatening messages." Id.
¶ 9a.

---

[2] Unless otherwise noted, this Memorandum Opinion and Order omits all
internal alterations, citations, footnotes, and quotation marks in quoted
text.
[3] It is unclear how, or whether, Adomino is affiliated with the
defendants.

In response to the plaintiff's reports of harassment, the plaintiff alleges that Jurado, Columbia's Resident Housing Director for Broadway Hall, required her to meet with a "male harasser,"[4] which she contends violated Islamic modesty requirements. Id. ¶¶ 6, 8a. The plaintiff further alleges that "Investigator Garvey"[5] nodded in agreement when the plaintiff stated, "If I were a white woman . . . this would have been handled already." Id. ¶ 10a. She also alleges that "Columbia refused to investigate Wu while aggressively dismissing [the plaintiff's] complaints," and that "NYPD collaborated with Columbia to conceal harassers' identities." Id. ¶¶ 9b, 13. She cites what she describes as a "Columbia 2021 DOE Audit" reflecting that "Black women wait three times longer for investigations." Id. ¶ 10b.

The plaintiff alleges that on October 2, 2024, she was coerced into a psychiatric evaluation after her harassment reports. Id. ¶ 12a. She further alleges that a former Columbia therapist, Shirley Matthews, "fabricated 'paranoia' diagnoses in [her] records," and "improperly contacted the Wu family and engaged in unethical, unprofessional, and inappropriate conduct that violated medical and ethical standards." Id. ¶ 11a-b. The plaintiff alleges that she was forced into "psychiatric

---

[4] It is unclear who the "male harasser" is.
[5] It is unclear how, or whether, "Investigator Garvey" is affiliated with the defendants.

confinement without [a] hearing" and denied access to her dorm. Id. ¶¶ 12b, 14.

The plaintiff commenced this action on October 7, 2024. ECF No. 1. The plaintiff filed the SAC on April 15, 2025. ECF No. 37. The defendants now move to dismiss the SAC pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 38. For the reasons that follow, the motion is **granted.**

## II. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).

To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for

4

the misconduct alleged." Id. While the Court should construe the facts alleged in the light most favorable to the plaintiff, the Court "is not bound to accept as true a legal conclusion couched as a factual allegation." Id.

A pro se plaintiff's pleadings are held to "less stringent standards" and must be "liberally construed." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)). But the Court may not read into the complaint factual allegations that are not there. Iqbal, 556 U.S. at 678 (2009).


## III. DISCUSSION

In this case, the plaintiff has submitted an outline of her claims without sufficient factual allegations to push her claims from the threshold of possible to plausible. Id. ("The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.").

### A. The Title IX Claim.

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). At the pleading

stage, the plaintiff need only allege "specific facts that support a minimal plausible inference of [sex] discrimination." Doe v. Columbia Univ., 831 F.3d 46, 56 (2d Cir. 2016). However, "a conclusory allegation of gender discrimination is not sufficient to survive a motion to dismiss." Yusuf v. Vassar Coll., 35 F.3d 709, 715 (2d Cir. 1994).

Because Title IX does not authorize suits against individual school officials, the claim against Jurado for a violation of Title IX must be dismissed. See Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 257 (2009).

In her Title IX claim, the plaintiff alleges three events: (1) two male students hijacked her Bluetooth device to track her movements; (2) another male photographed her without consent; and (3) Jurado required her to meet with one of the plaintiff's male harassers. SAC ¶¶ 7-8. Even construed liberally, these allegations do not suggest plausibly that any challenged conduct occurred because of the plaintiff's sex; they identify male actors but include no non-conclusory facts supporting an inference of sex-based motive or that Columbia treated the plaintiff differently from a similarly situated male student. See Roe v. St. John's Univ., 91 F.4th 643, 660 (2d Cir. 2024) (dismissing a Title IX claim "absent allegations that a school treated similarly situated members of the opposite sex . . . differently"); Yusuf, 35 F.3d at 715 ("A plaintiff must thus

6

also allege particular circumstances suggesting that gender bias
was a motivating factor . . .").

To the extent the Title IX claim complains about peer
harassment, a plaintiff must allege plausibly that an
appropriate school official had actual knowledge of sex-based
harassment that was severe, pervasive, and objectively
offensive, and responded with deliberate indifference such that
the plaintiff was effectively denied equal access to educational
opportunities. See Davis v. Monroe Cnty. Bd. of Educ., 526 U.S.
629, 650 (1999). The SAC does not plead facts supporting those
elements as to sex-based harassment or deliberate indifference
after actual notice. Therefore, because the SAC fails to plead
sex-based discrimination or deliberate indifference on the part
of Columbia, the Title IX claim against Columbia fails.

The plaintiff also alleges, as part of the Title IX claim,
that she was subjected to religious discrimination because
Jurado required the plaintiff "to meet alone with male harasser,
violating Islamic modesty requirements." It is unnecessary to
reach whether this conclusory allegation suggests religious
discrimination because Title IX prohibits only discrimination
based on "sex" and there is nothing about the allegation that
suggests the plaintiff was discriminated against based on sex.

Accordingly, the defendants' motion to dismiss the
plaintiff's Title IX claim (Count I) is **granted.**

## B. The Title VI Claim.

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, . . . be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To state a claim, a plaintiff must allege that (1) the defendant discriminated on a prohibited basis; (2) the discrimination was intentional; and (3) the discrimination was a substantial or motivating factor for the defendant's action. Tolbert v. Queens Coll., 242 F.3d 58, 69 (2d Cir. 2001); see also Eldars v. State Univ. of N.Y. at Albany, No. 20-cv-2693, 2021 WL 4699221 at *4 (2d Cir. Oct. 8, 2021) (dismissing plaintiff's claim under Title VI for failing to allege that the defendant's actions were "motivated by discriminatory animus").

In her Title VI claim, the plaintiff alleges that (1) Wu sent her multiple threatening messages; (2) Columbia refused to investigate Wu; (3) an investigator nodded in response to the plaintiff's comment that "[i]f I were a white woman . . . this would have been handled already;" and (4) a purported Columbia audit result showed that Black women wait longer for investigations. SAC ¶¶ 9-10. These allegations do not support plausibly an inference that any challenged conduct occurred because of the plaintiff's race, color, or national origin, or that discriminatory animus was a substantial or motivating

factor for Columbia's actions. <u>See</u> <u>Tolbert</u>, 242 F.3d at 69;
<u>Eldars</u>, 2021 WL 4699221, at *4.

    The plaintiff provides no facts about Columbia's
investigation of Wu's actions against the plaintiff. The
plaintiff suggests that Columbia did conduct an investigation
because she notes a sympathetic reaction from an investigator.
To the extent the plaintiff intended to complain about the
timing of the investigation, she provides no factual allegations
on the exact timing of that investigation. She fails to allege
any facts to show that the investigation in her case was
noticeably longer than the investigation of complaints by
students who were not the same race, color, or national origin.
She also pleads nothing about the outcome of the investigations.
The fact that an investigator may have provided an encouraging
nod to the plaintiff says nothing about the actual timing or
outcome of any investigation of the complaint. And the alleged
audit result of the investigations in general says nothing about
the actual facts of any investigation of the plaintiff's
complaint.

    To the extent that the plaintiff complains about peer
harassment, Title VI liability requires that an appropriate
school official with substantial control had actual knowledge of
harassment based on race, color, or national origin that was
severe, pervasive, and objectively offensive, and responded with

deliberate indifference that effectively denied the plaintiff

equal access to educational opportunities. See Zeno v. Pine

Plains Cent. Sch. Dist., 702 F.3d 655, 665-66 (2d Cir. 2012).

The plaintiff provides no factual allegations about when and how

Columbia became aware of any alleged severe harassment, how

Columbia reacted to such knowledge, and how it affected the

plaintiff's education at Columbia.

The Title VI claim does not allege any wrongdoing by

Jurado. Moreover, Title VI provides for liability only against

entities receiving federal financial assistance, and not against

individual employees. See Kelly v. Rice, 375 F. Supp. 2d 203,

208 (S.D.N.Y. 2005). Therefore, the Title VI claim against

Jurado must be dismissed.

Accordingly, the defendants' motion to dismiss the

plaintiff's Title VI claim (Count II) is **granted.**

### C. The ADA Claims.

Liberally construed, the SAC asserts claims of

discrimination and retaliation under Title III of the ADA.[6]

Title III of the ADA provides that "[n]o individual shall

be discriminated against on the basis of disability in the full

and equal enjoyment of the goods, services, facilities,

privileges, advantages, or accommodations of any place of public

---

[6] Because the allegations concerning Jurado do not relate to the ADA in
any respect, the plaintiff's ADA claims are construed as asserted only
against Columbia.

accommodation." 42 U.S.C. § 12182(a). Title III applies to private places of education, including Columbia. 42 U.S.C. § 12181(7)(J).

### 1. The ADA Discrimination Claim.

To state a discrimination claim, a plaintiff must allege "(1) that she is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation, and (3) that defendants discriminated against her by denying her a full and equal opportunity to enjoy the services defendants provide." Camarillo v. Carrols Corp., 518 F.3d 153, 156 (2d Cir. 2008).

A "disability" under the ADA requires a showing that the plaintiff (a) has a physical or mental impairment that substantially limits a major life activity, (b) has a record of such impairment, or (c) was regarded as having such impairment. 42 U.S.C. § 12102(1). Without sufficient allegations to show a qualifying disability, an ADA discrimination claim necessarily fails. See Ibela v. Allied Universal, No. 21-1995-CV, 2022 WL 1418886, at *1-2 (2d Cir. May 5, 2022) (summary order) (dismissing the ADA discrimination claim where the plaintiff failed to show that "his bipolar disorder impacted, let alone substantially limited, a major life activity").

In this case, the SAC does not plead plausibly the threshold element that the plaintiff is "disabled" within the

11

meaning of the ADA. The SAC alleges no non-conclusory facts describing an impairment that substantially limits a major life activity, no record of such an impairment, and no facts showing that the plaintiff was regarded as having such an impairment. The only allegation referencing a possible disability is a disputed diagnosis of paranoia, which the plaintiff herself contests. SAC ¶ 11b. Because the SAC does not allege plausibly a qualifying disability, it fails to state a claim for discrimination under the ADA.

### 2. The ADA Retaliation Claim.

The ADA also prohibits retaliation: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). To state a retaliation claim, a plaintiff must allege (1) that she engaged in an activity protected by the ADA; (2) that the defendants were aware of this activity; (3) that the defendants took adverse action against her; and (4) that a causal connection exists between the alleged adverse action and the protected

activity. <u>Treglia v. Town of Manlius</u>, 313 F.3d 713, 719 (2d Cir. 2002).[7]

Protected activity under the ADA consists of "action taken to protest or oppose statutorily prohibited [disability] discrimination." <u>Cornetta v. Town of Highlands</u>, 434 F. Supp. 3d 171, 187 (S.D.N.Y. 2020). Without such allegations, a retaliation claim cannot stand. <u>See</u> <u>id.</u> at 187-88 (dismissing an ADA retaliation claim where the plaintiff alleged retaliation for complaints of political corruption rather than disability discrimination).

In this case, the SAC does not allege plausibly that the plaintiff engaged in any protected activity. While the plaintiff alleges that she was coerced into receiving a psychiatric evaluation after complaining about "harassment," there are no facts alleged to show that her complaints were about alleged disability discrimination. Because the SAC does not allege plausibly that the plaintiff engaged in protected activities — namely, opposing or protesting disability discrimination — it fails to state a claim for retaliation under the ADA.

---

[7] In contrast to an ADA discrimination claim, "[a]s long as a plaintiff has a good faith belief that he was disabled and requested a reasonable accommodation, [she] can state a claim for ADA retaliation." <u>Ibela</u>, 2022 WL 1418886, at *2; <u>Weissman v. Dawn Joy Fashions, Inc.</u>, 214 F.3d 224, 234 (2d Cir. 2000) ("[E]ven if [the plaintiff] has failed to prove that there was a violation of ADA, the defendant may still have retaliated against [her] for engaging in protected conduct.").

In sum, because the plaintiff has not alleged plausibly that she has a disability within the meaning of the ADA, her discrimination claim fails. And because she has not alleged plausibly that she engaged in protected activity, her retaliation claim also fails. Accordingly, Columbia's motion to dismiss the ADA claims (Count III) is **granted.**

### D. The § 1983 Claim.

"To state a claim under § 1983, a plaintiff must allege violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). In this Circuit, private conduct is attributable to the State under three recognized routes: (1) compulsion or control; (2) joint action/close nexus; or (3) public function. See Fabrikant v. French, 691 F.3d 193, 207 (2d Cir. 2012).

In her § 1983 claim, the plaintiff alleges that the "NYPD collaborated with Columbia to conceal harassers' identities," and she was forced into a psychiatric facility without a hearing.[8] SAC ¶¶ 13-14. However, the SAC alleges no facts showing that the defendants were coerced by the State, delegated a public function, or willfully participated in a joint activity

---

[8] Because the allegations concerning Jurado do not relate to § 1983 in any respect, the plaintiff's § 1983 claim is construed as asserted only against Columbia.

with the NYPD. The bare statement that "NYPD collaborated with Columbia" is conclusory and does not allege plausibly an agreement, concerted action, or any overt act in furtherance of a shared unconstitutional goal. Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002). Allegations that a private party reported information to, or cooperated with, police are insufficient to establish state action without facts showing a prearranged plan or concerted activity. See Betts v. Shearman, 751 F.3d 78, 85 (2d Cir. 2014) ("requesting police assistance and providing information that led to police action did not make [the defendant] a joint participant in state action"); see also Ginsberg v. Healey Car & Truck Leasing, Inc., 189 F.3d 268, 272 (2d Cir. 1999)(holding that a private party cannot be considered a state actor whenever "it legitimately calls for official assistance or protection").

Because the SAC contains no non-conclusory factual allegations linking Columbia to state action under any recognized test, it fails to allege plausibly a § 1983 claim.[9] Accordingly, the motion to dismiss the plaintiff's § 1983 claim (Count IV) is **granted.**

---

[9] In light of this conclusion, it is unnecessary to consider whether the SAC otherwise states a due-process violation based on the alleged involuntary psychiatric confinement.

## IV. CONCLUSION

The Court has considered all of the parties' arguments. To the extent not addressed specifically, those arguments are either moot or without merit. For the foregoing reasons, the defendants' motion to dismiss is **granted without prejudice.**

Any amended complaint must be filed by **October 29, 2025.** If the plaintiff fails to file an amended complaint by that date, the current complaint will be dismissed with prejudice.

The Clerk is respectfully directed to close all motions pending in this case.


SO ORDERED.
Dated:     New York, New York
           September 30, 2025

                                  _____
                                       John G. Koeltl
                                  United States District Judge

16